MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2020 ME 70
Docket:       BCD-19-297
Argued:       March 3, 2020
Decided:      May 19, 2020

Panel:        MEAD, GORMAN, JABAR, HUMPHREY, HORTON, and CONNORS, JJ.[1]

FRIENDS OF LAMOINE et al.

v.

TOWN OF LAMOINE et al.

MEAD, J.

[¶1]  Harold MacQuinn, Inc., (MacQuinn) appeals from a judgment of the Business and Consumer Docket (*Duddy, J.*), *see* M.R. Civ. P. 80B, vacating a Town of Lamoine Board of Appeals decision that reversed the Town Planning Board's denial of MacQuinn's application for a permit pursuant to the Town's Site Plan Review Ordinance, and affirming and reinstating the Planning Board's decision. MacQuinn contends that (1) the Rule 80B complaint filed by Friends of Lamoine and Jeffrey Dow as Trustee for the Tweedie Trust (collectively, Friends) should have been dismissed as untimely, (2) the Board of Appeals should have conducted a de novo rather than appellate review, (3) the Planning Board's

---

[1]  Although Chief Justice Saufley participated in this appeal, she resigned before this opinion was certified.

2

findings in denying the permit were unsupported by substantial evidence, and (4) the Planning Board should have waived a criterion of the ordinance as duplicative or inapplicable. We affirm the judgment.

## I. BACKGROUND

[¶2]  We draw the following facts from the administrative record before the Planning Board, the municipal body that issued the operative decision. *See* M.R. Civ. P. 80B(f); *Appletree Cottage, LLC v. Town of Cape Elizabeth*, 2017 ME 177, ¶¶ 2, 11, 169 A.3d 396; *Osprey Family Tr. v. Town of Owls Head*, 2016 ME 89, ¶ 2, 141 A.3d 1114.

[¶3]  In February 2017, MacQuinn filed two separate applications with the Planning Board, pursuant to the Town's Gravel Ordinance and Site Plan Review Ordinance, seeking permits to allow the expansion of its existing gravel extraction operation at Kittredge Pit from 65 acres to 108 acres.[2]  *See* Lamoine, Me., Gravel Ordinance (March 16, 2011); Lamoine, Me., Site Plan Review

---

[2]  MacQuinn had previously filed identical Gravel Ordinance and Site Plan Review Ordinance permit applications with the Planning Board in 2012. The Planning Board considered those applications for more than a year and a half before voting to deny them in 2014. MacQuinn appealed the Planning Board denials to the Board of Appeals, and, around the same time, filed a complaint in the Superior Court alleging that two of the Planning Board members were biased. In 2016, MacQuinn and the Town reached an agreement that the Superior Court lawsuit would be dismissed in exchange for MacQuinn's ability to conduct a "do-over" of the applications before the Planning Board, without the allegedly biased members sitting and pursuant to the Ordinances in effect at the time of MacQuinn's original applications. In its April 4, 2019, judgment, the Business and Consumer Docket concluded that the Town did not err in applying the earlier versions of the Ordinances when it conducted its "do-over" review of the 2017 applications, and Friends does not raise the issue in this appeal.

Ordinance (March 16, 2011). On November 14, 2017, the Planning Board voted to deny the Gravel Ordinance permit, issuing written findings on November 21, 2017. On December 11, 2017, the Planning Board voted to deny the Site Plan Review Ordinance permit and issued written findings.

[¶4] MacQuinn appealed both denials to the Board of Appeals (BOA). Pursuant to the BOA's interpretation of the respective appeals provisions in the Gravel Ordinance and Site Plan Review Ordinance, the BOA conducted a de novo review of the Gravel Ordinance permit application and an appellate review of the Planning Board's Site Plan Review Ordinance denial. The BOA reversed the Planning Board's decision on both permit applications and remanded to the Planning Board with instructions to issue both permits. Following the BOA's directive, the Planning Board voted to approve both permits on July 9, 2018.

[¶5] On August 8, 2018, Friends filed a complaint in the Superior Court pursuant to M.R. Civ. P. 80B, and the case was transferred to the Business and Consumer Docket (BCD). Friends challenged only the BOA's decision to reverse the Planning Board's denial of the Site Plan Review Ordinance permit and not the BOA's decision concerning the Gravel Ordinance permit. On April 4, 2019, the BCD issued an order vacating the BOA's decision and affirming the Planning

4

Board's December 2017 decision denying the Site Plan Review Ordinance permit. In response to MacQuinn's first of two motions to reconsider, the BCD amended its judgment in part in an order signed June 17, 2019, altering its basis for why the Planning Board's findings regarding the Site Plan Review Ordinance's section J.1 natural landscape criterion were supported by sufficient evidence; the BCD maintained its conclusion that the Planning Board's decision was the operative one for review and should be affirmed. Following that amended judgment, the BCD denied MacQuinn's motion for reconsideration of the amended judgment, and MacQuinn appealed.

## II. DISCUSSION

### A. Timeliness of Friends' Rule 80B Complaint

[¶6] MacQuinn argues that Friends' M.R. Civ. P. 80B complaint should have been dismissed as untimely. In particular, MacQuinn invokes 30-A M.R.S. § 2691 (2020), governing boards of appeal, to suggest that Friends' complaint was foreclosed. We disagree and hold that the applicable statute is 30-A M.R.S. § 4482-A (2020), which covers land use decisions of bodies other than boards of appeal and pursuant to which Friends' complaint was timely filed.

[¶7] We interpret statutes de novo, looking first to the plain language and delving beyond the plain meaning only if the language is ambiguous. *See*

*Wister v. Town of Mount Desert*, 2009 ME 66, ¶ 17, 974 A.2d 903. Rule 80B provides that "[t]he time within which review may be sought shall be as provided by statute" and establishes a default time period if one is not provided by statute. M.R. Civ. P. 80B(b). Here, the time for appeal is provided by statute. We have not yet construed 30-A M.R.S. §§ 2691(3)(H), 4482-A, or 4482-B (2020), each of which was enacted in 2017, and we take the opportunity to do so now. *See* P.L. 2017, ch. 241, §§ 3, 5, 6 (effective Nov. 1, 2017).

[¶8]  Title 30-A M.R.S. § 2691(3)(G) establishes a 45-day period for appeals following a vote of a board of appeals. Section 2691(3)(H) provides that

> a decision of the board is a final decision when the project for which the approval of the board is requested *has received all required municipal administrative approvals by* the board, *the planning board* or municipal reviewing authority, a site plan or design review board, a historic preservation review board and any other review board created by municipal charter or ordinance. *If the final municipal administrative review of the project is by a municipal administrative review board other than a board of appeals, the time for appeal is governed by section 4482-A.* Any denial of the request for approval by the board of appeals is considered a final decision even if other municipal administrative approvals are required for the project and remain pending. A denial of the request for approval by the board of appeals must be appealed within 45 days of the date of the board's vote to deny or within 15 days of final action by the board on a reconsideration that results in a denial of the request.

6

30-A M.R.S. § 2691(3)(H) (emphasis added). Here, when the BOA determined that the Planning Board erred in its interpretation of the Site Plan Review Ordinance, it reversed and remanded the matter to the Planning Board to approve the permits as the last and final step in the permitting process. Pursuant to the plain language of section 2691(3)(H), the final decision was that of the Planning Board, not the Board of Appeals, and the time for appeal is therefore governed by 30-A M.R.S. § 4482-A. *See* 30-A M.R.S. § 2691(3)(H).

[¶9]   Section 4482-A, entitled "Review of other municipal land use decisions," permits a party to file an appeal in the Superior Court of "a final decision within 30 days of the date of the vote on the final decision." 30-A M.R.S. § 4482-A(1). Section 4482-A(2) instructs that section 4482-B defines what is meant by a "final decision." 30-A M.R.S. § 4482-A(2). Section 4482-B mirrors the language found in section 2691(3)(H) and dictates that "a municipal land use decision is a final decision when an application for a project . . . has received all required municipal administrative approvals," including those by the "planning board," before a party can appeal. 30-A M.R.S. § 4482-B.

[¶10]  Contrary to MacQuinn's contention that Friends should have filed its Rule 80B complaint immediately following the BOA's decision, Friends could not have appealed the granting of the Site Plan Review Ordinance permit until,

on remand from the BOA, the Planning Board voted to approve the permit. *See* 30-A M.R.S. § 4482-B ("An appeal may not be filed under this section prior to the review and final approval of a project by each applicable municipal administrative review board . . . .").[3] Because Friends filed its Rule 80B complaint on August 8, 2018, within 30 days after the Planning Board's July 9, 2018, final vote, the complaint was timely. *See* 30-A M.R.S. § 4482-A(1).

B.    The Operative Decision

[¶11]  In order to determine which municipal decision is the operative decision for our review on the merits, we must first determine whether the BOA's review pursuant to the Site Plan Review Ordinance is de novo or appellate. *See Gensheimer v. Town of Phippsburg*, 2005 ME 22, ¶¶ 5, 7, 868 A.2d 161. When the BOA conducts a de novo review, acting as "factfinder and decision maker," the BOA's decision is the operative decision. *Id.* ¶ 7 (quoting *Stewart v. Town of Sedgwick*, 2000 ME 157, ¶ 4, 757 A.2d 773). However, when the BOA conducts an appellate review, the decision of the Planning Board, or other previous tribunal, is operative. *Id.*

---

[3]  If the BOA had instead upheld the Planning Board's permit denial, rather than directing the Planning Board to grant MacQuinn's request for approval, MacQuinn would be correct that the time period for appeal would have been within 45 days of the BOA decision. Section 2691(3)(H) provides, "Any *denial* of the request for approval by the board of appeals is considered a final decision even if other municipal administrative approvals are required for the project and remain pending. A denial of the request for approval by the board of appeals must be appealed within 45 days of the date of the board's vote to deny . . . ." 30-A M.R.S. § 2691(3)(H) (2020) (emphasis added).

8

[¶12] In determining the nature of the BOA's review, "we look to state statutes and to the municipality's own ordinances." *Yates v. Town of Southwest Harbor*, 2001 ME 2, ¶ 11, 763 A.2d 1168. Pursuant to 30-A M.R.S. § 2691(3)(C), the default review for a board of appeals is de novo, but a town's ordinance may establish an appellate standard instead. Under a de novo review, the BOA can receive evidence, *see* 30-A M.R.S. § 2691(3)(C)-(D), but in an appellate review, the BOA "limit[s] its review on appeal to the record established by the [planning] board" and "may not accept new evidence," 30-A M.R.S. § 2691(3)(C).

[¶13] Turning to the Ordinance's language, we examine section M of the Site Plan Review Ordinance, which governs appeals and provides:

1. If the [Planning] [B]oard disapproves an application or grants approval with conditions that are objectionable to the applicant or to any abutting landowner or any aggrieved party, . . . or when it is claimed that the provisions of this section do not apply, or that the true intent and meaning of the ordinance has been misconstrued or wrongfully interpreted, the applicant, an abutting landowner, or aggrieved party . . . may appeal the decision of the [Planning] [B]oard, as follows:

   a. A written appeal must be filed within 30 days of the time the applicant receives a written notice of the [Planning] [B]oard's decision.

b. Appeals involving *administrative procedures* or *interpretation of this ordinance* may be heard and decided by the [BOA] as detailed below.

c. When *errors of administrative procedure* are found by the [BOA], the case shall be referred back to the [Planning] [B]oard for rectification.

d. *When errors of interpretation are found, the [BOA] may modify the interpretation or reverse the order of the [Planning] [B]oard but may not alter the conditions attached by the [Planning] [B]oard.* All changes in conditions, other than changes made by the granting of a variance, shall be made by the [Planning] [B]oard in accordance with the [BOA's] interpretation.

e. Appeals involving conditions imposed by the [Planning] [B]oard, or a decision to deny or approve, shall be made to the Superior Court, when such appeals do not involve administrative procedures and interpretation which shall first be heard and decided by the [BOA], as detailed above.

Site Plan Review Ordinance § M (emphasis added).

[¶14]  MacQuinn argues that rather than creating an appellate standard, the Ordinance merely narrows the types of appeals that the BOA can hear. We do not dispute MacQuinn's observation that the Ordinance limits the BOA's jurisdiction,[4] but we disagree with its contention that the BOA's limited jurisdiction dictates de novo review for appeals over which it has jurisdiction.

---

[4] The ordinance limits the BOA's jurisdiction to matters involving "administrative procedures or interpretation." Lamoine, Me., Site Plan Review Ordinance § M(1)(b) (March 16, 2011). Matters that involve "conditions imposed by the [Planning] [B]oard, or a decision to deny or approve," and not

[¶15]  MacQuinn also argues that the language in the Ordinance is not specific enough to abrogate the statutory default of de novo review.  *See Stewart*, 2000 ME 157, ¶ 11, 757 A.2d 773.  A town need not use particular language, such as the word "appellate," in establishing appellate review.  We have on numerous occasions construed an ordinance that did not use the word "appellate" to nonetheless require the appeals board to undertake appellate, rather than de novo, review.  *See, e.g.*, *Mills v. Town of Eliot*, 2008 ME 134, ¶ 15, 955 A.2d 258.  What is important is the function that the ordinance's language prescribes.  "If the ordinance prescribes an appellate function, the [BOA] will review the record of the proceedings before the previous tribunal, review the evidence presented to that body, review the tribunal's written or recorded findings, hear oral or written argument of the parties, and determine whether the lower tribunal erred in reaching its decision."  *Stewart*, 2000 ME 157, ¶ 8, 757 A.2d 773.

[¶16]  In a number of cases involving similar ordinances, we held that the following or nearly identical language "explicitly authorize[d] a board of appeals to undertake appellate review": the "[BOA] may modify or reverse action of the planning board or code enforcement officer . . . only upon a finding

---

questions of administrative procedure or ordinance interpretation, must be appealed directly to the Superior Court.  *Id.* § M(1)(e).

that the decision is clearly contrary to specific provisions of this chapter."[5]

*Mills,* 2008 ME 134, ¶ 15, 955 A.2d 258 (quotation marks omitted) (citing *Gensheimer*, 2005 ME 22, ¶ 11, 868 A.2d 161, and *Yates*, 2001 ME 2, ¶¶ 12-13, 763 A.2d 1168).

[¶17]  In another decision, we recently held that an ordinance "limit[ed] the BOA to reviewing a decision of the Planning Board in an appellate capacity only" where it enabled appeals where the "Planning Board disapproves an application or grants approval with conditions that are objectionable . . . , or *where it is claimed that the provisions of this chapter do not apply*, or that the *true intent and meaning* of this chapter have been *misconstrued or wrongfully interpreted*."  *MSR Recycling, LLC v. Weeks & Hutchins, LLC*, 2019 ME 125, ¶¶ 10-11, 214 A.3d 1 (emphasis added) (quotation marks omitted).  The emphasized language is akin to the Site Plan Review Ordinance's language limiting appeals to legal questions of interpretation and procedure.  *See* Site Plan Review Ordinance § M.

---

[5] Further, unlike the ordinances in *Stewart* and *Yates*, which contained language suggestive of both types of review, the Site Plan Review Ordinance contains no language suggestive of de novo review. *See Stewart v. Town of Sedgwick*, 2000 ME 157, ¶ 11 & n.6, 757 A.2d 773 (observing that the ordinance included the mandate that BOA decisions include a statement of "*findings*" and that the appellant would have the "*burden of proof*"); *Yates v. Town of Southwest Harbor*, 2001 ME 2, ¶¶ 12-13, 763 A.2d 1168 (comparing the ordinance with the one in *Stewart* and concluding that, although the ordinances contained similar provisions indicating de novo review, the ordinance in *Yates* provided the board of appeals with authority to conduct appellate review).

12

[¶18]  Contrary to MacQuinn's contention, because the Ordinance limits the BOA's jurisdiction to questions of legal interpretation and procedure and prevents the BOA from altering conditions set by the Planning Board, it cabins the BOA's review to the factual record created by the Planning Board.  Such a limitation of the review to the record that was before the prior tribunal is inconsistent with a de novo review, in which original fact-finding is a defining feature.  *See Stewart*, 2000 ME 157, ¶ 7 & n.2, 757 A.2d 773.  We conclude that the Ordinance requires the BOA to conduct appellate review of the site plan permit decision, and thus that the BOA applied the proper standard here.  Accordingly, the operative decision for our review is the Planning Board's December 11, 2017, decision denying the Site Plan Review Ordinance permit.[6]  *See id.* ¶ 4 ("If . . . the [BOA] acted only in an appellate capacity, we review

---

[6] At oral argument, MacQuinn suggested that of the two Planning Board decisions, the operative decision for review should instead be the Planning Board's July 2018 decision, which followed the BOA's reversal of the Planning Board's December 2017 decision.  We disagree.  The July 2018 Planning Board decision was made on remand pursuant to the mandate from the BOA.  Had the Planning Board disregarded the BOA's instructions on remand, it would have acted improperly given the BOA's appellate authority.  *See Fitanides v. City of Saco*, 2015 ME 32, ¶ 10, 113 A.3d 1088. Underlying our doctrine identifying the operative decision for review is the aim that the operative decision represent the decision of the fact-finding tribunal.  *See Stewart*, 2000 ME 157, ¶¶ 4-5, 7 & n.2, 757 A.2d 773 (explaining that the BOA decision will be the operative decision for review where the BOA acted as a tribunal of original jurisdiction by conducting de novo review, but otherwise the previous tribunal's decision will be operative).  In this case, the operative decision for our review is the Planning Board's initial decision, pursuant to which it conducted its original fact-finding.  *See Fitanides*, 2015 ME 32, ¶ 9, 113 A.3d 1088 (concluding that where the Planning Board had conducted two votes, the operative decision was its initial decision, in which it granted conditional approval and issued the permits, rather than its later decision to keep the permits unchanged).

directly the decision of the Planning Board, or other previous tribunal, not the [decision of the BOA].").

C.    Review of the Planning Board's Decision

[¶19]  When the BCD acts as an appellate court, "we review directly the operative decision of the municipality" for "abuse of discretion, errors of law, or findings not supported by the substantial evidence in the record." *Gensheimer*, 2005 ME 22, ¶¶ 7, 16, 868 A.2d 161 (quotation marks omitted). In conducting our review, we are limited to reviewing the record that was before the Planning Board, the operative decision maker. *See Appletree Cottage, LLC*, 2017 ME 177, ¶ 11, 169 A.3d 396.

[¶20]  Because MacQuinn is the party seeking to vacate the Planning Board's decision on the application for site plan review, it bears the burden of persuasion on appeal. *See Anderson v. Me. Pub. Emps. Ret. Sys.*, 2009 ME 134, ¶ 3, 985 A.2d 501. We accord substantial deference to a municipal agency's factual findings. *Fissmer v. Town of Cape Elizabeth*, 2017 ME 195, ¶ 13, 170 A.3d 797. Where, as here, "an appellant had the burden of proof before the agency, and challenges an agency finding that it failed to meet that burden of proof, we will not overturn the agency fact-finding unless the appellant demonstrates that the administrative record compels the contrary findings that

14

the appellant asserts should have been entered." *Anderson*, 2009 ME 134, ¶ 3, 985 A.2d 501; *see Grant v. Town of Belgrade*, 2019 ME 160, ¶ 9, 221 A.3d 112.

[¶21] The Planning Board denied MacQuinn's Site Plan Review Ordinance permit application on the basis that it failed to meet criteria set forth in three subsections of the Ordinance: J.1 (Preserve and Enhance the Landscape), J.10 (Groundwater Protection), and J.17 (Stormwater Drainage). *See* Site Plan Review Ordinance §§ J.1, J.10, J.17. In regard to section J.10, the Planning Board found that MacQuinn failed to demonstrate the "lack of adverse impact upon groundwater, and in particular upon the aquifer and the Cold Spring Water Company public water supply." Ample record evidence supports this finding. The Planning Board received competent evidence from a number of experts regarding the Cold Spring groundwater supply. These experts disagreed as to the geology surrounding the spring and the threat that MacQuinn's proposal would pose to the spring. We have stated, "A board's finding is not unsupported by substantial evidence merely because two inconsistent conclusions can be drawn from the evidence."[7] *Veilleux v. City of*

---

[7] Indeed, it is clear that substantial evidence in the record supports either conclusion regarding groundwater impact. The BOA, in conducting its de novo review of the Gravel Ordinance permit and finding that groundwater was not threatened, observed that "Willem Bru[t]saert, a civil and environmental engineer, gave a contrary conclusion, however the Board is persuaded by the testimony from Mr. Deyling and Mr. Gerber." *See* Lamoine, Me., Gravel Ordinance § 7.D.3 (March 16, 2011). The BCD concluded that that finding—by a different agency (the BOA) on a different permit (the Gravel Ordinance)—"supersed[ed]" the Planning Board's December 2017

*Augusta*, 684 A.2d 413, 415 (Me. 1996). Regarding the Planning Board's ability to determine credibility and to weigh evidence, we will not substitute our judgment for that of the Planning Board. *See Anderson*, 2009 ME 134, ¶ 27, 985 A.2d 501.

[¶22] Because we conclude that the Planning Board's finding regarding section J.10 was supported by substantial evidence, we cannot say that MacQuinn carried its burden of showing that the record compels a contrary finding in its favor. *See Anderson*, 2009 ME 134, ¶ 3, 985 A.2d 501. It is therefore unnecessary to address the remaining bases for the Planning Board's denial. *See Tompkins v. City of Presque Isle*, 571 A.2d 235, 236 (Me. 1990) (relying on the record that was before the operative board and concluding that, in order for the Court to reverse the findings of the board, "the record must establish that the evidence before the board would have compelled the Board to make a positive finding that the application of the plaintiffs complied with *all* of the seventeen criteria set forth in the Ordinance"). In light of our holding,

---

finding that MacQuinn failed to demonstrate a lack of adverse impact on groundwater. We discern no reason why the BOA's groundwater finding on the Gravel Ordinance should supplant our direct analysis of the Planning Board's Site Plan Review Ordinance decision. As such, we review the Planning Board's decision directly, and observe that in order to vacate that decision, MacQuinn has the burden to demonstrate that the record compels contrary findings regarding each of the sections upon which the Planning Board based its denial, sections J.1, J.10, and J.17. *See Anderson*, 2009 ME 134, ¶ 3, 985 A.2d 501.

16

MacQuinn's contention that the Planning Board should have waived criteria in section J.1 of the Site Plan Review Ordinance does not require discussion.

The entry is:

> Judgment affirmed. Remanded to the Business and Consumer Docket with instructions to remand the matter to the Board of Appeals to reinstate the Planning Board's denial of the permit application.

Edmond J. Bearor, Esq.(orally), Jonathan P. Hunter, Esq., and Katie R. Foster, Esq., Rudman Winchell, Bangor, for appellant Harold MacQuinn, Inc.

Maxwell G. Coolidge, Esq. (orally), Ellsworth, for appellees Friends of Lamoine and The Tweedy Trust

The Town of Lamoine did not file a brief

Business and Consumer Court Docket docket number CV-2018-05
FOR CLERK REFERENCE ONLY